## Commonwealth v. Long.

(Decided January 19, 1923.)

### Appeal from Madison Circuit Court.

Intoxicating Liquors—Possession of Illicit Still—Statement of Defendant Tending to Show Guilt.—Any statement or admission made by a defendant in a criminal prosecution inconsistent with his innocence and tending to show guilt may be proven by the Commonwealth as a guilty circumstance and to be weighed by the jury as it sees proper. Hence, in a prosecution for possessing an illicit still which was operated by the prosecuting witness, who stated that he was doing so under a partnership arrangement with defendant on whose farm the still was operated, it is competent for the Commonwealth to prove that defendant, after the prosecuting witness was arrested, made a statement to the latter that if he would not mention defendant's name he would pay the fine if his alleged partner (the prosecuting witness) would lay out the jail sentence and not connect defendant's name with the operation of the still.

CHAS. I. DAWSON, Attorney General, THOS. B. McGREGOR, Assistant Attorney General, and J. W. BAXTER, Commonwealth's Attorney, for appellant

BURNAM & GREENLEAF for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Certifying the law.

The appellee, Collins Long, was indicted, tried and acquitted in the Madison circuit court on a charge of

having in his possession an illicit still. The Commonwealth offered to prove by a witness a certain admission or statement by the appellee as a circumstance indicating his guilt, to which the court sustained an objection and declined to permit the witness to answer. To test the accuracy of that ruling the Commonwealth has appealed to obtain a certification of the law and that is the sole question presented on the appeal.

The appellee owns a farm located on a pike near the city of Richmond upon which there are two tobacco barns and at least one stock barn. The sheriff of the county discovered, through legal means, a still in operation in one of the tobacco barns, located nearest to the pike, and found one William White operating it. White testified that at the solicitation and request of appellee they entered into an agreement to manufacture whiskey on appellee's premises and selected the tobacco barn farthest away from the pike as the place to do so; that White was to operate the still and appellee to furnish the material as well as the location for the still and they were to be equal partners in the proceeds; that under that arrangement he first set up the still in the barn agreed upon and operated it some twenty days when they became apprehensive of discovery and it was then agreed to move the still to the other barn nearer the pike where it was found by the sheriff; that the moving was done one evening between 8:30 and 9 o'clock with the team of appellee and he assisted in the moving and furnished a driver for his team, all of which was done a week or two weeks before the still was discovered. The colored man who worked on appellee's premises, and who White said drove the team when the still was moved, also testified as to his participation in that act and that appellee was present assisting and requested witness to do so. Each of them testified that another witness was present but that witness denied their testimony. Appellee denied all of what both the witnesses for the Commonwealth testified and stated that he had no knowledge whatever of the operation of the still on his premises by White. The Commonwealth introduced John H. Gibson, who testified that after White was arrested and before his trial he and the witness went to Mason Dunn's place to see appellee, whom they found there, and there was a conversation between White and appellee concerning the matter. The Commonwealth offered to prove that in that conversation appellee said to White, in substance,

that he (appellee) would pay White's fine if the latter "would lay out the jail sentence and not connect his (appellee's) name with it," and that he did not "want to be mixed up in it;" and that he did not want White to "mention his name."

As stated, the court declined to permit the witness to answer in the presence of the jury, but upon what ground the record does not disclose. Under the circumstances, we think the court committed error in its ruling, since it is quite manifest, that the testimony was a substantive circumstance tending to prove guilt and, of course, was one to be weighed by the jury in the light of all the testimony introduced. It will be observed that appellee did not propose, according to the offered testimony, to *secure* the fine, but to pay it absolutely, which would scarcely be done by one who was entirely innocent for the benefit of another who had presumed to violate the law on his premises without his knowledge or consent and to thereby subject him to a possible prosecution and punishment as well as the probable forfeiture of his farm. Such a course would not be the usual and ordinary one emanating from entire innocence. On the contrary, the most natural and reasonable effect of such high handed and presumptuous conduct on the part of the guilty perpetrator would be the engendering of indignation on the part of the one who was innocent, followed by a determination to vigorously prosecute the actual offender rather than to assist him out of the difficulties by sharing his punishment.

We are, therefore, clearly of the opinion that the evidence was proper and the court erred in rejecting it, and this opinion is certified as the law of the case.